## UNITED STATES BANKRUPTCY COURT
### FOR THE
### EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

In the Matter of:                              :
                                               :    **Chapter 11**
**MEDICAL ASSOCIATES OF**                      :
**MT. VERNON, INC.,**                          :
                                               :       **Case No. 20-11615-KHK**
              **Debtor.**                      :
                                               :

## OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' MOTION FOR ORDER (A) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENT; (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND PROVIDING FOR HEARING ON APPROVAL OF THE MOTION

Comes now John P. Fitzgerald, Acting United States Trustee, Region Four, (the "UST") and objects to Medical Associates of Mt. Vernon, Inc.'s (the "Debtor") Motion for Order (A) Authorizing and Approving Asset Purchase Agreement; (B) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (C) Authorizing the Assumption and Assignments of Certain Executory Contracts; and Providing for Hearing on Approval of the Motion (the "Motion" docketed as ECF No. 82). This objection is filed pursuant to 28 U.S.C. §586 and 11 U.S.C. §307. The Motion should be denied as granting same would allow the Debtor to succeed in an unfair and unreasonable sale which benefits primarily the insiders in receiving the assets of the estate without giving fair value to the creditors in the subchapter V case and subverting the plan and confirmation process. In support of his objection, the UST alleges as follows:

## **PRELIMINARY STATEMENT**

It is clear from the record that the Debtor is in no position to reorganize and that the Debtor will seek to utilize subchapter V to liquidate substantially all, if not all, of its assets prior to filing a plan in this case.  Through the Motion, the Debtor is seeking the Court's approval of the sale of substantially all of its assets to Mount Vernon Medical Associates, P.C., whose only owners, Albert Herrera and Stephanie Carter, are the only owners of the Debtor. Though the sale is to be free and clear of all liens, claims and interests pursuant to section 363(f), the proceeds of the proposed sale will not be sufficient to satisfy the secured claim of the Internal Revenue Service and it does not appear that the IRS has consented to the sale. Even if the IRS does consent, it will leave no other creditors with any payment whatsoever, so it will be, at best, a minimum payout to only one creditor which is not the object of subchapter V.

The sale is not in the best interest of the Debtor's estate. The Debtor cannot carry its burden of proving that this private sale is either fair or reasonable, nor can it show the good faith required for every 363 sale, particularly under the heightened scrutiny required when the sale has been orchestrated among insiders.  There has been no effort to market and sell the Debtor's assets and the Debtor should not be permitted to undermine the subchapter V process through this standalone private sale to the Debtor's insiders.  The sale is not being conducted subject to higher and better offers or bids.  Rather, the Motion should be denied or deferred at least until the Debtor retains a broker and the broker has an opportunity to evaluate the value of the Debtor's assets and solicit higher and better offers than the current insider offer.

## <u>BACKGROUND</u>

1.      On July 10, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.   The Debtor is operating its business and managing its assets as debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 case.  On March 27, 2020, the Debtor amended its Voluntary Petition to select the Small Business Debtor designation. <u>ECF Doc. No. 34</u>.

2.      The Debtor is in the business of providing medical services to individuals in the northern Virginia area at several locations which are leased from various entities.

3.      The Debtor is and has been at all times during the course of this bankruptcy, a professional corporation.

4.      The Debtor is owned by two shareholders:

      a.      Albert Herrera, who owns a 50% interest ("Herrera").

      b.      Stephanie Carter, who owns a 50% interest ("Carter").

5.      The Debtor has operated under this name since March 4, 2020, when a name change was filed with the Virginia State Corporate Commission. Prior to that, the Debtor operated under the name of Mt. Vernon Internal Medicine, P.C.  Mt. Vernon Internal Medicine, P.C., was originally formed on December 11, 1981.

6.      Herrera and Carter have, upon information and belief, been the sole shareholders of the Debtor since at least December 31, 2015.

7.      Mount Vernon Medical Associates, P.C. ("MVMA") is a Virginia corporation formed on September 29, 2020.

8.      MVMA has two initial directors:

      a.     Alberto Herrera[1]; and

      b.     Carter.

9.     The office address for MVMA is listed as 8988 Lorton Station Blvd, Suite 100, Lorton, VA 22079-4757 in its Articles of Organization.

**Article V**  A. The professional corporation's initial registered office address, including the street and number, if any, which is identical to the business office of the initial registered agent, is

   8988 Lorton Blvd., Suite 100 _____  Lorton _____, VA __22079_____
       (number/street)            (city or town)                  (zip)

   B. The registered office is located in the ☒ county **or** ☐ city of _____Fairfax_____

This is the same address for the Debtor per the Amended Petition filed on July 29, 2020, question 4, which shows the principal place of business as 8988 Lorton Station Blvd., Suite 100, Lorton, VA 2209.

| 4. | Debtor's address | Principal place of business | Mailing address, if different from principal place of business |
|---|---|---|---|
| | | 8988 Lorton Station Blvd., Suite 100 | |
| | | **Lorton, VA 22079** | |
| | | Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| | | **Fairfax** | Location of principal assets, if different from principal place of business |
| | | County | |
| | | | Number, Street, City, State & ZIP Code |

10.     The Motion also provides for the assumption and assignment of certain leases and other agreements with certain limited liability companies, including but not limited to:

      a.     Laurel Hill Site Center, LLC, which is currently owned by Albert A. Herrera (1%), Katherine B. Herrera (55.716%) and Stephanie D. Carter (43.284%) as of June 17, 2016.  This entity is the company who owns and leases the property at 8988 Lorton Station Blvd. to the Debtor; and

      b.     Springfield Development Group, which is currently owned by Albert Herrera (18.16%), Stephanie D. Carter (42.58%) and the Herrera Family Trust

---

[1] Unless there is a new party being introduced to the transaction, it is believed that this is a typographical error and this is Albert Herrera.

(39.26%) as of December 31, 2016.  This entity is the company who owns and leases the property at 6128 Brandon Avenue to the Debtor.

c.     The assumption of these two leases and agreements are an additional financial gain and benefit to the insiders.

d.     There are two other leases being assumed which are owed to third parties in SL Hinson Assoc., LLLP and Beal Lowen for office spaces at 8109 Hinson Farm Rd.  The Debtor does not, to the knowledge of the UST, have an interest in those locations financially.

## **ARGUMENT**

Section 363(b) of the Code provides that a debtor-in-possession "may use, sell, or lease … property of the estate" outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363(b).  Although section 363(b) does not require Chapter 11 debtors to propose a plan of reorganization before selling estate assets, many courts impose their own requirements on such pre-confirmation sales to prevent debtors from using section 363(b) as a vehicle for circumventing the protections afforded creditors under Chapter 11. *In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

This Court follows and has adopted the sound business purpose test as the standard to be used in determining the appropriateness of a pre-confirmation sale. *Id.; see also In re WBQ Partnership,* 189 B.R. 97, 102 (Bankr. E.D.Va. 1995); *see also Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983).  This review should be especially heightened in a subchapter V case and where the sale is proposed to be made to insiders of the Debtor.

In reviewing a motion to sell, a court must find and the Debtor must prove that: (i) a sound business reason justifying the pre-confirmation sale, (ii) adequate and reasonable notice of the sale was provided to all parties, (iii) that the sale has been proposed in good faith and (iv) that the purchase price is fair and reasonable." *Rose v. Logan*, 2014 U.S. Dist. Lexis 38890 (D. Md. 2014); *see also In re MCSGlobal Inc.,* 562 B.R. 648 (Bankr. E.D.V.A. 2011); *In re W.A. Mallory Co., Inc.*, 214 B.R. at 836.

The sale itself fails the sound business purpose test on three of the four points. One of the main issues is that the sale of the business at this juncture of the case fails to be supported by a sound business purpose. As argued by the Debtor, the income is "likely to remain somewhat flat over the coming months" but specifically does not state that it is decreasing, which is an important factor to consider in rushing to attempt to sell the assets prior to a hearing on confirmation.[2] Motion at page 2; *See also Committee of Equity Sec. Holders v. Lionel Corp.,* 722 F. 2d 1063, 1071 (2d Cir. 1983).

As to the sound business reason for justifying the sale, the UST cannot opine that a sale of the business it not an option which may have merit. However, a 363 sale should not be approved unless and until the debtor can show that it will benefit the estate as a whole. *See In re Au Natural Restaurant, Inc.,* 63 B.R. 575, 581 (Bankr. S.D.N.Y. 1986) (refusing to approve a sale where most of the sale proceeds would benefit one creditor); *In re Fremont Battery Co.,* 73 B.R. 277, 279 (Bank. N.D. Ohio 1987) (the court found no business reason to justify the sale where the proceeds

---

[2] Debtor has also represented this theme or position during this case. In its Motion to Determine Need for Medical Ombudsman, Docket 46, paragraph 2, it stated that "MVIM is continuing in the operation of its business and expects professional service revenues to continue to grow post-petition." The July operating report, filed as Docket 65, showed cash receipts of $608,243.92 and net cash flow of $269,968.71. The August operating report, filed as Docket 69, showed cash receipts of $487,042.09 and net cash flow of ($62,649.48. September's operating report has not been filed and additional documents including aging accounts receivable, payroll information, filed taxes and other financial documentation, which were previously requested, have not been provided to the U.S. Trustee's office, making the review incomplete.

would, at most, benefit a single creditor). Here, the sale proceeds will not be sufficient to satisfy the IRS secured claim and it is not clear whether the IRS has consented to the sale. The proposed sale to the insider controlled MVMA will only benefit the insiders and one creditor. Thus, it should not be approved.

The monthly operating reports filed with the court to date shows that the Debtor's business is suffering, and thus changes are required, but allowing a sale prior to the confirmation hearing date of substantially, if not all, of the assets of the business for *de minimis* value and return to the estate would be premature. The motion is effectively an attempt at a sub rosa plan, in that it predetermines the essential terms of the plan of reorganization. This is disfavored by the Courts and should be rejected here as it circumvents the plan confirmation process and deprive creditors of the protections it affords. <u>See</u> *Pension Benefit Guar. Corp. v. Braniff Airways, Inc.,* 700 F.2d 935, 939-40 (5th Cir. 1983); <u>see also</u> *In re Gulf Coast Oil Corp.,* 404 B.R. 407 (Bankr. S.D. Tex. 2009). This issue is even more important in a subchapter V case, since there is no unsecured creditors committee and the plan proposal and confirmation process is on a much faster track than in a normal Chapter 11. Objections to confirmation in this case are due by December 8 with plan confirmation set for December 15, 2020.

As to the notice factor of the test, the UST raises a question as to the adequacy of notice provided to creditors in this case. At the status conference, it was found that one of the largest lenders in the case, Atlantic Union Bank, who provided the PPP loan just prior to the filing of the petition, had not been listed as a creditor in the initial filing resulting in an amended petition. There are other lenders who have debts owed above $1,000,000 who have not participated to date and stand to be wiped out completely if the Motion is approved. Notice of the sale needs to be

established as confirmed or sufficient to ensure that the Motion is consensual or at least understood by all parties in the case.

The third prong of the analysis requires the Court to assess whether the sale has been proposed in good faith. This element requires the Court to scrutinize the sale to insure that it was an arms' length transaction and absolutely fair under the circumstances. *In re W.A. Mallory Co*., 214 B.R. at 837.  A debtor-in-possession and its senior officers owe a duty of loyalty to the bankruptcy estate, which includes refraining from insider self-dealing and avoiding conflicts of interest and the appearance of impropriety. *See In re Coram Healthcare Corp.*, 271 B.R. 228, 235-36 (Bankr. D. Del. 2001); *see also In re Hechinger Investment Company of Delaware*, 327 B.R. 537, 549 (D. Del. 2005).

Although the Debtor alleges that the sale was negotiated at arms' length, this is by definition an impossibility where the purchaser is an insider. Courts apply a higher degree of scrutiny to approve sales to insiders.  *In re Bidermann Indus. U.S.A., Inc.,* 203 B.R. 547 (Bankr. S.D.N.Y. 1997).  *See also, Mission Iowa Wind Co. v. Enron Corp.,* 291 B.R. 39, 43 (S.D.N.Y. 2003) (where there is any possibility of self-dealing, it is incumbent on the bankruptcy court not to defer in conclusory fashion to the debtor's business judgment). Bankruptcy courts having reviewed sales to insiders, may look at a number of factors, including but not limited to:

      i)   The nature of the sale process;

      ii)   Whether the assets have been exposed to the market;

      iii) The transparency of the proceedings; and

      iv) The fairness of the price.

It is without question that Herrera and Carter are insiders of the Debtor and MVMA pursuant to 11 U.S.C. § 101(31), which provides that insiders include directors, officers or other

persons in control of the corporate debtor.  They have been the controlling directors since at least

2015, and shared control of the corporate debtor prior to 2015 with other individuals.  They are

also the controlling directors in the new entity, MVMA.  The Motion states that the transaction

was "negotiated privately" but it is unclear who it would be negotiated with – both MVMA and

the Debtor are controlled by the same individuals.  Motion at Page 12.  The proposed sale serves

only the interests of Herrera and Carter: it enables them to move on to a new entity, MVMA, while

leaving behind all of their debts, and additionally continuing to pay the rents to their affiliated

insider LLC entities via the business.  The only creditor who slightly benefits from the transaction

is the IRS who may receive a portion of the amount owed.  The sale has not been exposed to the

market, as the Debtor believes there is no market to expose it to.  The proceedings have not been

transparent, and the proposed purchase price is simply a number that the Debtor has provided

without any justification.

In *W.A. Mallory Co.,* the debtor sought to sell assets to the sisters of the debtors' president

- a relationship that was fully disclosed to the court. But notwithstanding the debtor's candor, the

court was concerned whether the sales were truly at arm's length or rather an attempt by the debtor

to abuse the bankruptcy process. Exercising the higher scrutiny required for insider transactions,

the court refused to approve the sale, explaining:

> In bankruptcy, the perception of a particular proceeding is often as important as the
> reality. Since the proposed sales involve insiders as purchasers, each of the parcels
> of real estate should have been offered to the public in some fashion before the Court
> in good conscience could approve such insider sales. The debtor cannot simply
> represent that there is no public, non-insider interest in the subject properties. The
> debtor must show the Court that the properties are being sold for the highest
> attainable price The debtor has failed to carry its burden of proof of demonstrating
> that the sales, are proposed in good faith. The debtor has also failed to give the Court

> any means by which it can measure the fairness and reasonableness of the proposed
> sales.

*In re W.A. Mallory Co.,* 214 B.R. at 837.

The same reasoning applies here.  The perception of the sale here is as important as the reality.

Since the proposed sale is to another entity owned and controlled by the same individuals that own

and control the Debtor, the assets should have first been marketed and offered to the public in

some fashion.

Lastly, the Debtor has not shown that the sales price is fair and reasonable.  The Debtor

provides no efforts to market the practice to any other bidders or providers (as per the filings with

the UST, Herrera and Carter are not the sole medical providers for the Debtor). The Debtor does

not provide any analysis or valuation for the business beyond a statement that "[t]he Debtor

believes that the proposed sale of the Assets and assignment of the Assigned Contracts to the Buyer

provides the best value for such business assets and represents the likely highest and best offer

available to the Debtor."  Motion at page 17.  Debtor scheduled accounts receivable as of the

Petition Date in the amount of $590,92200.  Schedule A/B, Docket 35.  Debtor has listed secured

claims in the amount of $4,332,110.00, though it lists some of these as disputed, in its Schedule

D.  Schedule D, Docket 35.  The IRS is listed at $2,150,000 and additional business loans with

liens in the accounts receivable are listed in excess of $2.1 million.  While the bulk of the unsecured

debt listed on Schedule E/F is owed to insiders, there is still approximately $1 million or more

owed to non-insiders, taxing authorities and other creditors.  Schedule E/F, Docket 35.

During the operating period from July 10 through August 31, 2020, officer compensation

totaled $92,939.05.  Periodic Monthly Operating Report, Docket 69.  There are only two officers

for the Debtor.  The exact payroll has been requested to determine the amounts paid to the officers

and shareholders but has not been provided to date.  Rents were also paid for the various properties,

some of which are owned by insider LLCs and some of which are leased from third parties, totaling $181,937.98, and which amount includes rent paid to Laurel Hill Site Center, LLC and Springfield Development Group, LLC.  These specific leases are to be assumed by the Motion, and the entities are creditors in the Bankruptcy.

Under the proposed purchase price of $700,000, once the administrative costs are addressed, the net proceeds to creditors will essentially be de minimis with mainly the IRS receiving a small portion of its claim. The Debtor has failed to show that the assets are being sold for the highest attainable price and have failed to give the Court any means by which to measure the fairness and reasonableness of the proposed sale. The Debtor has also not proposed a sale which is supported by a valuation, nor is it subject to any higher or better offers or a bid process. Under these circumstances, the Debtor has not carried its burden of proving that the sale is proposed in good faith.

WHEREFORE, John P. Fitzgerald, III, Acting United States Trustee UST, Region 4, respectfully requests that the Court sustain this objection, deny the Motion to Sell, and grant such other relief as the Court may deem appropriate.

Respectfully submitted,

JOHN P. FITZGERALD, III
Acting United States Trustee, Region 4
*/s/ Michael T. Freeman*
Michael T. Freeman
Asst. United States Trustee
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(703) 557-7274- Direct Dial
(202) 934-4174- Office Cell
Michael.T.Freeman@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 3rd day of November, 2020, a copy of the Objection was served via ECF notification to:

Kevin O'Donnell, counsel for the Debtor @ kmo@henrylaw.com
Michael G Wolff, Subchapter V Trustee @ mwolff@wolawgroup.com

I further certify that a true copy of the foregoing Objection was mailed first class mail, postage pre-paid, to the following parties:

Medical Associates of Mt. Vernon, P.C.
8988 Lorton Station Blvd., Suite 100
Lorton, VA 22079

/s/ Michael T. Freeman
Michael T. Freeman
Asst. United States Trustee
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(703) 557-7274- Direct Dial
(202) 934-4174- Office Cell
Michael.T.Freeman@usdoj.gov